# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FREDERICK LEON PERKINS,

Defendant-Appellant.

UNPUBLISHED
November 12, 2015

No. 322593
Oakland Circuit Court
LC No. 2013-247696-FC

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unlawful imprisonment, MCL 750.349b, assault by strangulation, MCL 750.84(1)(b), and six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (penetration by actor armed with a weapon). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for the unlawful imprisonment conviction, 12 to 30 years' imprisonment for the assault by strangulation conviction, and 50 to 100 years' imprisonment for each first-degree criminal sexual conduct conviction. We affirm.

## I. OTHER ACTS EVIDENCE

This case arises from an incident in which defendant raped his ex-girlfriend, AW, after she accompanied him to his home. CH, another ex-girlfriend of defendant, testified at trial that defendant raped her while they were still dating. Defendant argues that CH's testimony was admitted only to show defendant's propensity to commit crimes and that any probative value was outweighed by the danger of unfair prejudice. We disagree.

The trial court has discretion regarding the admissibility of bad acts evidence. See *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009). Reversal is only warranted if there has been an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court chooses an outcome that is "outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). "[T]he trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). Generally, "[t]he determination whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). Preliminary

-1-

questions of law regarding admissibility of evidence are reviewed de novo. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). An error in the admission of evidence does not necessitate reversal unless it is more probable than not that the error was outcome determinative and unless the defendant establishes that "more probably than not, a miscarriage of justice occurred." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

Extrinsic evidence of prior bad acts is generally not admissible for the purpose of proving that the defendant has a propensity to commit such acts. MRE 404(b); *People v Hall*, 433 Mich 573, 579; 447 NW2d 580 (1989). However, in certain circumstances, such evidence may be admissible under MRE 404(b) "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident." *Hall*, 433 Mich at 579, quoting MRE 404(b). Bad acts evidence is admissible when it is relevant, when it is admitted for a proper purpose, and when its probative value is not substantially outweighed by its prejudicial effect. MRE 403(b); *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The prosecutor bears the burden of establishing relevance. *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008). Evidence is admitted for a proper purpose when the purpose of its admission is not to reflect on the defendant's character or prove that the defendant has a propensity to commit the crime. *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). " 'Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.' " *Id.* at 627 (citation omitted).

General similarity between a prior bad act and the charged act does not, on its own, establish that the acts resulted from a common plan, scheme, or system. *Sabin (After Remand)*, 463 Mich at 64-65. However, evidence that a defendant committed a crime similar to the crime he is charged with "is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007) (citation and quotation marks omitted).

Defendant strangled both women until they became unconscious. Defendant used a gun to threaten both women. He raped and sodomized both women. He inserted a foreign object into each woman's vagina and anus. He forced both women to remove their clothing and perform oral sex on him. Therefore, the similarities between defendant's alleged assault on CH and on AW were sufficient to support an inference that the two assaults were manifestations of a common plan, scheme, or system. See *Dobek*, 274 Mich at 90.

Prior bad act testimony may also be admitted to rebut a defendant's claim that the charges were fabricated. See *People v Starr*, 457 Mich 490, 501; 577 NW2d 673 (1998) (finding testimony "to be admissible evidence to rebut [the] defendant's claim of fabrication of the charges"). Defense counsel attacked the credibility of AW's testimony during his closing argument. CH's testimony served a proper purpose because it bolstered AW's testimony that the encounter with defendant was not consensual. See *id.*

-2-

CH's testimony was relevant and admitted for a proper purpose because it bolstered AW's testimony and supported an inference that both rapes were manifestations of a common plan, scheme, or system. See *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004); *Sabin (After Remand)*, 463 Mich at 63. The testimony was not admitted as propensity evidence, but rather, to rebut defendant's claim that AW's testimony was not credible and to show a common plan, scheme or system. Therefore, the trial court properly granted the motion to admit the testimony. See MRE 404(b).

The probative value of the evidence was not substantially outweighed by its prejudicial effect. See *Steele*, 283 Mich App at 479. As discussed, the testimony had clear probative value because it was relevant to bolster the credibility of AW's testimony and to show defendant's common plan, scheme, or system in raping former or present girlfriends, which were major issues contested at trial. The prosecution did not attempt to use the evidence for an improper purpose at trial. Furthermore, CH's testimony was, if anything, less graphic and less shocking to a jury than AW's testimony about her rape. Although CH's testimony was certainly damaging to defendant's case, there is no reason to believe that the jury was *unduly* prejudiced by the testimony or that its prejudicial effect *substantially* outweighed its probative value. See *People v Buie (On Remand)*, 298 Mich App 50, 73; 825 NW2d 361 (2012) ("Evidence is not unfairly prejudicial under MRE 403 merely because it damages a party's case").

Defense counsel spent the bulk of his closing argument noting the inconsistencies in AW's and CH's testimony. Defense counsel pointed out that AW stated to one police officer that she initially consented to sex, and defense counsel argued that role-playing during a consensual sexual encounter between defendant and AW may have caused AW's physical injuries. Defense counsel pointed out that some portions of AW's testimony at trial were new and had never been previously relayed to any of the numerous people who interviewed AW before trial. Defense counsel argued that AW's injuries do not corroborate her story. The jury was made fully aware of the flaws in AW's and CH's testimony. " 'It is the province of the jury to determine questions of fact and assess the credibility of witnesses.' " *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007) (citation omitted). There is no basis to believe that the jury was not adequately equipped to—or did anything other than—evaluate the credibility of the witnesses and weigh the evidence accordingly. See *id.*

Furthermore, the trial court judge gave a limiting instruction to the jury that it must not determine that CH's testimony "shows that the defendant is a bad person or that he's likely to commit crimes." The court instructed the jurors that they "may only think about whether this evidence tends to show that the defendant acted purposefully," or "[t]hat the defendant used a plan, system or a characteristic scheme that he has used before," or whether the evidence "rebut[s] a claim of consent or . . . rebut[s] a claim that the incident was fabricated." This limiting instruction lessened any likelihood of prejudice and further protected defendant's right to a fair trial. See *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002) (noting that "a limiting instruction such as this one that cautions the jury not to infer that a defendant had a bad character and acted in accordance with that character can protect the defendant's right to a fair trial"). For the reasons discussed above, the trial court did not abuse its discretion when it allowed CH's testimony against defendant into evidence under MRE 404(b).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues in his Standard 4 brief on appeal that defense counsel rendered ineffective assistance when he (1) failed to file a motion for an investigator until six months after defendant was arrested, (2) failed to interview or subpoena witnesses on defendant's witness list, (3) failed to make an effort to impeach the victim, (4) failed to file a motion for a new trial, and (5) failed to seek the advice of experts regarding the DNA evidence. We disagree.

A defendant preserves the issue whether his defense attorney rendered ineffective assistance by moving for a new trial or a *Ginther*[1] hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant did not file a motion for a new trial or a *Ginther* hearing in the trial court. Therefore, the issue is unpreserved. See *id*.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *Petri*, 279 Mich App at 410. We review for clear error the trial court's findings of fact, and we review de novo the constitutional issue in an ineffective assistance of counsel claim. *Id*. Since defendant failed to preserve the issue, we review the issue for mistakes apparent on the record. *Id*.

In order to establish that defense counsel was ineffective, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). With regard to whether defense counsel's performance was deficient, there is a strong presumption that defense counsel's conduct constituted sound trial strategy. *Id*. at 52. A defendant has the burden to establish the factual predicate for his ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel rendered ineffective assistance because he failed to file a motion for an investigator until six months after defendant was arrested. Defendant contends that the motion for an investigator was not filed until after videotape footage was no longer available. However, defendant fails to establish that defense counsel should have hired an investigator earlier. Instead, defense counsel indicated in the pretrial hearing on the issue that he was requesting an investigator as a result developments during discovery. Defendant also fails to establish how the failure to file a motion for an investigator prejudiced him. Defendant contends that videotape footage was no longer available, but fails to explain what the videotape footage he refers to displayed or how the videotape footage would have benefitted the defense. He does not otherwise indicate how the failure to request to hire an investigator until six months after his arrest prejudiced him. Therefore, defendant abandons the argument on appeal for failure to adequately address the merits of his claim. See *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant also argues that defense counsel rendered ineffective assistance when he failed to interview or subpoena witnesses on defendant's witness list. However, defendant fails to establish the factual predicate for his claim because he does not indicate what the testimony of the witnesses would have been or how the testimony of each witness would have aided the defense. See *Hoag*, 460 Mich at 6. Defendant also does not attach an affidavit of any of the witness. Therefore, defendant's argument fails. See *id*.

Defendant next argues that defense counsel rendered ineffective assistance when he failed to make a diligent effort in impeaching AW and CH at trial with regard to their inconsistent statements and testimony. However, defendant fails to explain why counsel's conduct was deficient or why there is a reasonable probability that the outcome of the trial would have been different but for defense counsel's deficient performance. See *Trakhtenberg*, 493 Mich at 51. Therefore, defendant abandons the argument on appeal for failure to address the merits of his claim. See *Lopez*, 305 Mich App at 694. Furthermore, defendant's argument is without merit since it is apparent from the trial court record that the defense strategy was to highlight the inconsistencies in the testimony in order to establish that the victim engaged in consensual sexual intercourse with defendant. Defense counsel's closing argument focused on the inconsistencies between AW's testimony and her earlier statements, as well as the inconsistencies in CH's testimony. Therefore, defense counsel did not render ineffective assistance for failing to highlight the inconsistencies. See *Trakhtenberg*, 493 Mich at 51.

Defendant next argues that defense counsel was ineffective because he failed to file a motion for a new trial. Defendant contends that the evidence preponderated heavily against the verdict in this case. However, defendant fails to explain why his convictions were against the great weight of the evidence or how the failure to file a motion for a new trial prejudiced him. Therefore, defendant abandons his argument on appeal for failing to address the merits of his ineffective assistance of counsel argument. See *Lopez*, 305 Mich App at 694. Furthermore, defendant's convictions were not against the great weight of the evidence. A conviction is against the great weight of evidence if " 'the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.' " *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014) (citation omitted). A conviction is against the great weight of the evidence where "the testimony contradicts indisputable physical facts or laws, [w]here testimony is patently incredible or defies physical realities, [w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or where the witnesses testimony has been seriously 'impeached' and the case marked by 'uncertainties and discrepancies.' " *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (citations and quotation marks omitted; alteration in *Lemmon*). Conflicting testimony and issues regarding the credibility of witnesses are insufficient grounds to establish that a conviction is against the great weight of the evidence. *Galloway*, 307 Mich App at 167. There is no indication that the testimony presented by the prosecution defied physical facts or laws, or that the testimony was patently incredible or so inherently implausible that a reasonable juror could not have believed it. See *Lemmon*, 456 Mich at 643-644. To the extent that defendant argues that the inconsistencies in the testimony warrant a new trial, defendant's argument fails. See *Galloway*, 307 Mich App at 167. Thus, defense counsel did not render ineffective assistance when he failed to file a motion for a new trial. See *Trakhtenberg*, 493 Mich at 51.

Defendant next argues that defense counsel was ineffective for failing to seek expert advice to form a defense strategy. Specifically, defendant contends that defense counsel told him that he did not understand some of the medical and DNA reports. However, defendant fails to establish the factual predicate for his claim that defense counsel did not understand the medical or DNA reports, as well as his claim that an expert would have adequately clarified any confusion with regard to the medical or DNA reports. See *Hoag*, 460 Mich at 6. Defendant fails to explain what the expert would have added to the defense strategy or how he was prejudiced by the failure to seek the advice of an expert. Defendant also fails to explain how the expert's advice or opinions would have been used to challenge the contents of the medical and DNA evidence. Accordingly, defendant fails to establish the factual predicate for his claim. See *id*.

## III. PROSECUTORIAL ERRORS[2]

Defendant next contends in his Standard 4 brief that the prosecutor denied him of his right to a fair trial when she (1) withheld discovery documents until the day before trial, (2) made improper statements to the jury during closing arguments, (3) improperly vouched for the credibility of the victim, and (4) proffered perjured or inconsistent testimony. We disagree.

In order to preserve a claim that a prosecutor deprived him of a fair trial, a defendant must timely and specifically object in the trial court, unless an objection would not have cured the error. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not object in the trial court to any of the prosecutor's actions that he argues were improper. Therefore, the issue is unpreserved. See *id*.

We review an unpreserved claim of prosecutorial error or prosecutorial misconduct for plain error affecting the defendant's substantial rights. See *Brown*, 294 Mich App at 382. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). With regard to the third prong, the defendant must show prejudice, meaning that the error affected the outcome in the trial court. *Id*. When all three requirements are met, a reviewing court exercises its discretion in determining whether to reverse. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed]

---

[2] Defendant refers to his claims as claims of "prosecutorial misconduct." However, this Court recently recognized "that the term 'misconduct' is more appropriately applied to those extreme— and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). This Court explained that the majority of claims that a prosecutor made a technical error or an inadvertent error at trial "might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *Id*. at 88. Thus, the majority of the claims of prosecutorial misconduct in this case may be more accurately labelled as claims of prosecutorial error, with only those claims involving illegal conduct or a violation of the Michigan Rules of Professional Conduct rising to the level of misconduct. See *id*.

the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; alteration in *Carines*).

The test to determine whether a defendant is entitled to a new trial is to determine whether the prosecutor committed errors that deprived the defendant of a fair and impartial trial. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Brown*, 294 Mich App at 382-383.

Defendant's first argues that the prosecutor improperly withheld discovery documents, including the police report and the medical records, until one day before trial. To the extent that defendant argues that the prosecutor improperly suppressed material evidence in violation of his due-process rights, defendant's argument fails. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). The elements of a "*Brady*" violation include: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). However, defendant's argument fails the first prong of the test since there is no indication in the record that the prosecution suppressed or withheld documents. See *id*. Instead, as discussed in further detail below, the record reflects the fact that the prosecutor supplied defense counsel with the discovery materials, and defense counsel did not argue otherwise. See *id*.

To the extent that defendant argues that the prosecution failed to comply with a discovery order, defendant's argument also fails. Defendant refers to MCR 6.201 in his Standard 4 brief on appeal. MCR 6.201(A)(6) provides, in part, that a party in a criminal case must provide all other parties a description of, as well as the opportunity to inspect, documents. MCR 6.201(B)(1) and (2) state that the prosecutor must provide to a defendant any exculpatory information and any police report or interrogation record regarding the case *upon request*. The final pretrial order in this case stated that the prosecutor must provide certain information to defendant 14 days before trial, including any exhibits or physical evidence that the prosecution intends to introduce at trial, any exculpatory information or evidence that the prosecution knows about, and any police report concerning the case, except for a report of continuing investigation. However, there is no indication that the prosecutor failed to comply with the pretrial order or with MCR 6.201 since, as indicated above, there is no indication that the prosecution failed to provide documents to defense counsel. In fact, defense counsel stated during the January 31, 2014 pretrial hearing that he received the medical records from the prosecution and requested additional time to review the materials before trial. Defense counsel noted that he planned to meet with the prosecutor within the next week to ensure that he had everything he needed. The court adjourned the trial until a later date. Defense counsel noted during the March 19, 2014 pretrial hearing that he received discovery materials that day and still intended to meet with the prosecutor to review the entire discovery. The prosecutor stated, "I have given him and we've discussed all the information in the investigation that we have conducted in the case." Defense counsel did not challenge the prosecutor's remark and did not otherwise indicate that he had not received the medical records or the police report. Finally, according to a proof of service filed on October 2, 2013, the prosecutor served discovery on defense counsel on September 18, 2013 and September 19, 2013,

which included police reports and other police records, the forensic medical examination, and the hospital discharge instructions. A January 30, 2014 proof of service also indicates that medical records regarding the treatment of AW on the day of the incident were sent to defense counsel on that day. Accordingly, defendant's argument that the prosecutor improperly withheld discovery documents until the day before trial fails. See MCR 6.201(A)(6); MCR 6.201(B)(1) and (2).

Defendant next argues that the prosecutor made improper comments and statements during her closing argument with the purpose of misleading the jury. "During closing argument, a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case." *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014).

First, defendant takes issue with the following remark that the prosecutor made during her closing argument: "Perkins targeted [the victim]. He knew that she was in a bad spot. That she was looking for a place to live and he knew a way to make that happen. He knew a way that he could get her to his house in Farmington." However, this statement constituted a reasonable inference from the testimony presented at trial regarding why the victim met up with defendant and how defendant got the victim to meet with him, and there is no indication that the prosecutor's statement improperly deprived defendant of a fair trial. See *Lane*, 308 Mich App at 63.

Defendant also argues that the prosecutor improperly made the following statement during her closing argument: "I think it became different when he decides to take his gun, none of this is working for him, so he takes his gun and he forces it into [the victim's] vagina because she is a dirty b****. You like how that feels you dirty b****." Defendant contends that there was no testimony presented at trial that he made the statements that the prosecutor described. However, AW testified, "Then he tried to put the gun inside -- well he put the gun inside of my vagina and was like you like this, you like this. You [sic] dirty little b**** aren't you." The prosecutor's statement, therefore, accurately described the victim's testimony. To the extent that there were minor discrepancies between AW's testimony and the prosecutor's summary of her testimony, the discrepancies did not rise to the level of a deprivation of defendant's right to a fair trial. See *Brown*, 294 Mich App at 382-383.

Defendant next contends that that the prosecutor improperly stated, "Notice that the defendant is only charged once with every type of sexual -- of every type of rape that he committed." However, defendant fails to explain what was improper about this remark, and, therefore, abandons this argument on appeal. See *Lopez*, 305 Mich App at 694. Defendant also contends that the prosecutor improperly remarked that "Frederick Perkins claims to be a man of God and he targets vulnerable women." Although a prosecutor may not make an inflammatory reference to a defendant's religion with no justification other than to arouse prejudice, the prosecutor did not do so in this case. See *People v Bahoda*, 448 Mich 261, 266 n 6; 531 NW2d 659 (1995). Instead, the prosecutor merely highlighted the inconsistency between defendant's claim that he is a religious person and his actions in this case. The prosecutor did not state defendant's religion or discuss in detail the fact that defendant was religious. Therefore, the prosecutor did not deprive defendant of a fair trial when she made the statement. See *id*.

Defendant also argues that the prosecutor improperly vouched for the credibility of the prosecution's witnesses. "[A] prosecutor may not vouch for the credibility of a witness or suggest that he or she has some special knowledge that the witness is testifying truthfully." *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014). However, a prosecutor may make arguments on the basis of the facts and testimony presented in the case that the prosecutor's witnesses are credible. *Dobek*, 274 Mich App at 66. Defendant argues that the prosecutor improperly vouched for the credibility of the victim when she made the following remark during her closing argument:

> You know what she said over and over the corner of the gun got in. The corner of the gun went in. It was just the corner. *If she was lying about this or even hallucinating about it wouldn't she say the entire gun went up my anus?* Why does she mitigate it. Why does she lessen it and say no, it was just the corner. [Emphasis added.]

However, the prosecutor's statements were not improper. The prosecutor did not suggest that she had special knowledge that the victim testified truthfully. Instead, the prosecutor made a reasonable inference that the victim's testimony was believable based on the victim's testimony at trial. See *Lane*, 308 Mich App at 63; *Dobek*, 274 Mich App at 66. Accordingly, the prosecutor's remark did not constitute error.

Furthermore, even if any of the above statements by the prosecutor were improper, the statements were not outcome-determinative since the trial court gave a limiting jury instruction. The trial court instructed the jury that the statements and arguments of the lawyers are not evidence and that the jurors should accept what the lawyers say only if the statements are supported by the evidence, by the jurors' common sense, or by the jurors' general knowledge. " '[J]urors are presumed to follow their instructions, and instructions are presumed to cure most errors.' " *People v Snyder*, 301 Mich App 99, 112; 835 NW2d 608 (2013) (citation omitted). Therefore, to the extent that the prosecutor made improper statements during her closing argument, the error was harmless. See *id*.

Defendant argues that the prosecutor improperly presented perjured testimony and inconsistent testimony. "If a conviction is obtained through the knowing use of perjured testimony, it 'must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (citation omitted). In this case, defendant fails to show that the prosecutor presented perjured testimony or that the prosecutor knew that the testimony was perjured. Therefore, defendant's argument fails. See *id*. Although there were inconsistencies in the testimony presented by the prosecution, the inconsistencies do not indicate that the prosecutor acted improperly in presenting the testimony. See *id*. For the reasons discussed above, the prosecutor did not act improperly.

## IV. TRIAL COURT ERRORS AND BIAS

Defendant next argues in his Standard 4 brief that the trial court abused its discretion when it entered an opinion and order regarding the admission of evidence under MRE 404(b)

that was based on erroneous facts. Defendant argues that the trial court's findings of fact in its opinion and order indicate that the trial court was biased against him. We disagree.

In general, an issue is preserved for appellate review if it is raised, addressed, and decided in the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not challenge the trial court's factual findings from the opinion and order in the trial court. Therefore, the issue regarding whether the trial court abused its discretion is unpreserved. Defendant also argues that the trial court's findings of fact indicate that it was biased against him. A defendant must raise a claim of judicial bias in the trial court in order to preserve the issue for appellate review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not raise this issue in the trial court. Therefore, it is unpreserved. See *id*.

Since defendant did not raise the issue in the trial court, we review it for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763; *Jackson*, 292 Mich App at 597. Judicial bias is a structural error. *People v Duncan*, 462 Mich 47, 52; 610 NW2d 551 (2000). As such, it automatically prejudices the defendant. *People v Vaughn*, 491 Mich 642, 666; 821 NW2d 288 (2012). However, the error must have " 'resulted in the conviction of an actually innocent defendant' " or seriously affected the fairness, integrity, and public reputation of the trial proceedings. *Id*. at 666-667 (citation omitted). The issue is examined on a case-by-case basis and on the basis of the facts of each case. *People v Cain*, 498 Mich 108, 121; 869 NW2d 829 (2015).

Defendant argues that the trial judge's failure to articulate the proper facts of the case in her opinion and order indicate that the judge was biased against him. "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. Whether a trial judge was biased against a party is a fact-specific inquiry, and the reviewing court considers the totality of the circumstances to determine the issue. *Id*. at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171.

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

The prosecution cited the preliminary examination transcript in its statement of facts in its brief in support of its motion to admit prior bad acts evidence under MRE 404(b). The preliminary examination transcript reveals that the trial court only articulated one minor incorrect fact in its opinion and order. The trial court stated that "[d]efendant falsely imprisoned the female victim in this case in a motel room." However, the preliminary examination testimony

indicates that defendant picked AW up from the motel where she was staying and that the incident occurred at defendant's house. However, the minor factual mistake did not constitute an abuse of discretion because it did not affect the trial court's analysis regarding whether the other crimes or wrongs were admissible at trial under MRE 404(b). The minor factual mistake also does not indicate that the trial judge was biased against defendant. See *Stevens*, 498 Mich at 171-172. Accordingly, defendant's claim is without merit. See *id*.

## V. HABITUAL OFFENDER SENTENCE ENHANCEMENT

Defendant next argues in his Standard 4 brief that the trial court erred when it allowed the prosecutor to amend the notice of intent to seek a fourth habitual offender sentence enhancement. Specifically, defendant contends that the trial court did not approve the request. We disagree.

As stated above, an issue is preserved for appellate review if it is raised, addressed, and decided in the trial court. *Metamora Water Serv, Inc*, 276 Mich App at 382. Defendant did not challenge the trial court's decision to allow the prosecution to amend the notice of sentence enhancement in the trial court. Therefore, the issue is unpreserved. See *id*.

Generally, the issue whether the prosecutor provided timely notice under MCL 769.13 is reviewed de novo. See *People v Hornsby*, 251 Mich App 462, 469; 650 NW2d 700 (2002). However, since the issue is unpreserved, we review for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 762-763.

MCL 769.13(1) provides:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

MCL 769.13(2) adds:

> A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

An amendment to a notice to seek a sentence enhancement that changes the status of the offender must be filed within the 21-day timeframe. See *Hornsby*, 251 Mich App at 470-473.

The arraignment was held on October 8, 2013. The prosecution filed a notice to seek a fourth habitual offender sentence enhancement on the same day. The October 8, 2013 notice indicated that there was a minimum of five years' imprisonment for the CSC-I charges. On October 29, 2013, the prosecution filed an amended notice to seek a fourth habitual offender sentence enhancement, which reflected the 25-year minimum sentence under MCL 769.12(1)(a) and (6)(c) for the CSC-I charges. Thus, the amended notice was filed within 21 days after the arraignment as required under MCL 769.13(1). Defense counsel acknowledged receipt of the amended notice at the October 29, 2013 pretrial hearing. He stated that the amended notice was filed within 21 days and that he discussed it with defendant.

On the first day of trial, the prosecutor noted that she amended the fourth habitual offender sentence enhancement notice in this case to reflect a 25-year mandatory minimum sentence. She explained that defense counsel acknowledged receipt of the notice and the mandatory minimum sentence. Defense counsel stated that he discussed the issue with defendant and that defendant knew that there was a mandatory minimum sentence in this case. Defendant acknowledged that there was a mandatory minimum sentence. There is no indication that the trial court refused the prosecutor's request to amend the notice. Therefore, the trial court did not err in permitting the prosecution to file the timely amended notice of its intent to seek a fourth habitual offender sentence enhancement. See MCL 769.13(1).[3] To the extent that defendant raises any additional arguments in his Standard 4 brief that are not specifically addressed in this opinion, we have reviewed and rejected all of his arguments.

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

---

[3] Although the prosecutor did not file proof of service in the trial court, the error was harmless since defense counsel acknowledged receipt of the amended notice. See *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).